UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS

Plaintiff,

v.

THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CRAIG CARDULLO, FRANK CORRAO III, and DAVID IMONDI in their capacities as members of the City of Cranston Zoning Board of Review

Defendants.

CA 07 255 S

Civil Action No.

## COMPLAINT

This action arises out of the unlawful denial by the City of Cranston Zoning Board of Review ("Zoning Board") of an application, submitted pursuant to the City of Cranston Zoning Ordinance ("Zoning Ordinance") by Nextel Communications of the Mid-Atlantic, Inc., d/b/a Nextel Communications ("Nextel") for permission to construct, install, operate and maintain a wireless telecommunications service facility on property located at 185 Sockanosset Crossroads, Cranston, RI ("the Property"). This denial violates the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c) ("the FTCA"). As a result, Nextel seeks an injunction from this Court directing the Zoning Board to grant Nextel's application and allow Nextel's proposed wireless telecommunications service facility to be constructed at the Property without further delay.

## PARTIES

1. Plaintiff, Nextel, is a Delaware corporation with a principal place of business at 9 Crosby Drive, Bedford, Massachusetts. Nextel is licensed by the Federal Communications Commission ("FCC") to provide wireless telecommunications services for a region that includes Rhode Island and the City of Cranston.

2. Defendant, the City of Cranston (the "City"), is a duly authorized municipality constituted and existing under the laws of the State of Rhode Island.

3. Defendant, the Zoning Board, is a duly authorized unit of the City that has been delegated the authority, under the City Zoning Ordinance ("the Ordinance"), to grant permission for the construction and installation of wireless telecommunications facilities, including through the issuance of special use permits.

4. Defendants, Joy Montanaro; Edward DiMicco; Craig Cardullo; Frank Corrao, III; and David Imondi are each residents of the City and together served as the Zoning Board that denied the application at issue in this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically § 704 of the Federal Telecommunications Act of 1996.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), since the defendants each reside in this District, and the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

7. The FTCA was enacted, in 1996, to promote the rapid deployment, within the United States, of advanced telecommunications systems, including personal wireless services ("PWS").

8. Nextel is a provider of enhanced specialized mobile radio services, a type of commercial mobile radio services ("CMRS") which fall within the definition of PWS under the FTCA. Nextel is licensed by the FCC to provide CMRS in certain markets, including Rhode Island and the City of Cranston, and it has obligations under its FCC license to provide such services.

9. Nextel's PWS network is entirely digital and employs time division multiple access ("TDMA") technology. The network requires deployment of antennas throughout the area to be covered. The antennas are connected to receivers and transmitters that operate in a limited geographic area known as a "cell."

10. Nextel's portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment which must be located near the antennas themselves.

11. The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height of the antennas, the area's topographic features, the area's vegetative cover, and any obstructions to the radio frequency signals that may exist in a given area.

12. As Nextel's customers move throughout its service area, the transmission from a portable unit is automatically transferred to the closest Nextel facility without interruption in

service, provided there is overlapping coverage from the cells.

13. In order for Nextel's PWS network to function properly, there must be overlapping coverage between adjoining cells to allow for the transfer of calls from one cell to another and to avoid disconnection of the calls.

14. Each Nextel cell site must be located strategically within the coverage area in order to provide sufficient radio frequency coverage, connectivity with surrounding cell sites, and adequate capacity to provide service to Nextel customers. Disconnection of calls may also occur where any one cell is overburdened by the number of Nextel customer calls and the cell site lacks the capacity to handle the volume of callers.

15. Areas without adequate radio frequency coverage have substandard PWS service or, alternatively, may lack wireless coverage at all, each of which conditions leads to disconnected or "dropped" calls.

16. Cranston, a densely populated city, is heavily traveled by actual and potential Nextel customers, who work and live there and in nearby communities. Nextel's existing coverage is inadequate to serve its actual and potential customers, particularly in the vicinity of the Property.

17. The Nextel network presently has a significant gap in its coverage in proximity to the Property, as well as inadequate capacity to handle calls in the areas adjacent to this gap in its coverage. As a result, people conducting business or traveling through this section of Cranston have substandard or no wireless coverage.

18. Nextel determined that it needed to install additional antenna facilities in this part of Cranston in order to close its gap in coverage and to serve its customers adequately.

19. After careful investigation and review of at least four other locations, Nextel determined that the only available site from which it could close its gap in coverage and serve its customers was by building antennas upon the roof of the existing commercial structure at the Property, with the antennas extending approximately eight feet above the existing roof line. This type of roof-top solution is frequently utilized in the wireless industry as an alternative to the construction of antenna towers because it allows the carrier to provide service with minimal visual impact.

20. Nextel entered into a lease with the owner of the Property, Gateway Woodside, Inc., for the placement of its antennas and for the construction of an equipment shelter and appurtenant equipment next to the existing building.

21. Nextel submitted an application to the City of Cranston Zoning Board of Review for permission to construct its facility on September 18, 2006. As part of this process, it submitted a site plan, including photographs of the prospective installation, to the City of Cranston Planning Commission. Nextel appeared at a hearing before the Planning Commission on December 5, 2006.

22. On or about February 6, 2007, the Cranston Planning Commission approved Nextel's site plan application. (A true and accurate copy of the decision of the City of Cranston Planning Commission is appended hereto as Exhibit A).

23. In its unanimous decision approving Nextel's application, the City's Planning Commission, relied on Chapter 17.76.010 C.1 of the Cranston Zoning Ordinance, which provides:

> *Communication antennas not attached to a communication tower shall be permitted as an accessory use to any commercial, industrial, office, institutional or public utility structure, provided that:*

i. *The antennas are not higher than twenty-five (25) feet above the highest point of the structure;*

ii. *The antennas comply with applicable FCC and FAA regulations; and*

iii. *The antennas comply with all applicable zoning requirements and building codes, with the exception of the restriction pertaining to height limitations.*

24. The City Planning Commission found that Nextel's proposal should "be permitted as an accessory use since the antennae will be located on the roof of a commercial structure."

25. The following week, Nextel's representative met with the City's Zoning Enforcement Officer, who agreed that a Building Permit should be issued for construction of the facility without further review by the Board, a decision endorsed by the City's Solicitor. .

26. At the suggestion of the City's Zoning Enforcing Officer, Nextel withdrew its zoning application.

27. One week later, the City's Zoning Enforcing Officer called Nextel's representative and said that an "interested citizen" had called to complain about the Planning Commission's decision to allow Nextel to construct its facility at the Property and, as a result, the application would have to be approved by the Board.

28. The Board held a single hearing on Nextel's application, at which it refused to consider testimony from Nextel's radio frequency engineer concerning Nextel's coverage gap and the lack of alternative sites for its wireless facility as "expert" testimony, given his status as a Nextel employee.

29. Instead, the Board heard testimony from an "expert" witness offered by the owner of an unoccupied lattice tower on Eddy Street in Cranston, which the owner of the tower offered as an alternative site.

30. The Board would not allow Nextel's representative to direct questions to the owner's expert witness regarding the issue, advanced by Nextel, that the Eddy Street tower would offer duplicative coverage within Nextel's network, and would not remedy its coverage gap.

31. Similarly, the Board declined to consider Nextel's evidence regarding the lack of alternative sites available to address its coverage gap.

32. Notwithstanding the unanimous approval of the Planning Commission for the site, the provisions of the Code that provide that communications facilities on existing commercial structures are permitted as an "accessory use," and the position of the City's Planner and Solicitor that a special use permit for Nextel's proposed facility was not required, the Board insisted that a special use permit for the proposed site was necessary.

33. Despite its belief that, consistent with the decision of the Planning Commission, the City Planner, and the City Solicitor, it was not required to seek a special use permit under the Ordinance, Nextel presented evidence at the hearings that its proposed facility would be compatible with the surroundings, that it would not be injurious or offensive to the neighborhood, that it would not hinder the future development of the City, that it would promote the general welfare of the City, and that it would be in conformance with the purpose and intent of the Cranston comprehensive plan, all of which evidence was consistent with the requirements for the grant of a special use permit under the Ordinance.

34. Nextel's submission to the Board met all criteria specified by the Zoning Ordinance and Rhode Island law for obtaining the special permit it requested.

35. Notwithstanding that 1) it was not required to seek a special use permit under the Ordinance, 2) Nextel met all criteria for the issuance of a special use permit under the Ordinance

and 3) Nextel offered the testimony of a radio frequency engineer concerning the fact that it had examined numerous alternative sites, and neither the Eddy Street communications tower advanced by the owner of that tower's expert witness nor any other site would remedy Nextel's coverage gap, the Board denied Nextel's application by a unanimous vote on March 14, 2007.

36. The decision of the Board was filed with the Office of the City Clerk on June 6, 2007. (A true and accurate copy of the Notice of Decision structures is appended hereto as Exhibit B).

**COUNT I - Violation of the Telecommunications Act of 1996**

37. Nextel realleges and incorporates by reference the allegations of paragraphs 1 through 37 as if fully set forth herein.

38. Section 704 of the Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c), governs federal, state and local government regulation of the siting of PCS facilities such as the one at issue here.

39. The Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek expedited review in the federal courts. 47 U.S.C. § 332(c)(7)(B)(v).

40. Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

41. The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause of Article VI, Clause 2, of

the United States Constitution, preempts state laws and municipal ordinances or by-laws affecting such facilities to the extent that such laws, ordinances, and by-laws conflict with the Act.

42. Nextel's application constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

43. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "Any decision by a State of local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

44. Nextel's application for permission to construct a PWS telecommunications facility on the roof of the commercial structure at the Property did not require approval by the Board, given that, under Chapter 17.76.010 C.1 of the Cranston Zoning Ordinance, its antennas were a permissible accessory use.

45. Even were a special use permit required of Nextel to construct its facility, it met the requirements for a special use permit under the Zoning Ordinance and Rhode Island law.

46. It is the defendants' burden to produce substantial evidence supporting its denial of Nextel's application. The Zoning Board's decision violates the Act in that it is not "supported by substantial evidence contained in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii).

47. Accordingly, the Zoning Board's decision violated the Act's prohibition on state or local governments denying the placement, construction and modification of personal wireless service facilities without substantial evidence and a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

48. Pursuant to 47 U.S.C. § 332(c)(7)(B), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local

government or instrumentality thereof ...(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

49. Nextel has established that a) its application represents the only feasible plan to provide coverage to a significant geographic area within Cranston, b) denial of its request for permission, or for a special use permit (when none is required and where Nextel has otherwise met all criteria for issuance of such relief), would result in a significant gap in its provision of wireless communication services to its customers, and c) that there are no alternative sites within the affected area on or from which it may otherwise fill its coverage gap.

50. Consequently, the Zoning Board's denial of Nextel's application for permission to construct a telecommunications facility at the Property violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(II).

**WHEREFORE,** Nextel respectfully requests the following relief as against the defendants:

1. An expedited review of the matters set forth in this Complaint;
2. A declaratory judgment that Nextel was not required to obtain a special use permit for construction and installation of its proposed facility at 185 Sockanosset Crossroads, Cranston, Rhode Island;
3. An injunction mandating that the Zoning Board grant approval of any special use permit that it deems is required for Nextel to construct and install its proposed facility at 185 Sockanosset Crossroads, Cranston, Rhode Island;
4. An injunction and order of mandamus directing the City, through its officers and agents, to issue a building permit for construction of the antennas, equipment

shelter and appurtenant equipment identified in its application to the Zoning Board for its proposed facility at 185 Sockanosset Crossroads, Cranston, Rhode Island;

5. A judgment that the defendants' actions violated the Federal Telecommunications Act and are therefore void and invalid;

6. An award of Nextel's costs of suit herein, including reasonable attorneys' fees; and

7. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

NEXTEL COMMUNICATIONS OF
THE MIDATLANTIC, INC. d/b/a
NEXTEL COMMUNICATIONS

By its attorneys,

Paul S Cantor

Paul Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

William A. Worth

William A. Worth, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200.
Boston, MA 02114
Telephone: (617) 456-8000
Fax Number: (617) 456-8100

Date: July 5, 2007